CARL GOODSPEED v. THE STATE.

No. 12852. Delivered December 4, 1929.
Rehearing denied State March 12, 1930.
Reported in 25 S. W. (2d) 858.

The opinion states the case.

*Loftin & Hall* and *J. P. Williams,* all of Henrietta, *J. S. Jameson* of Fayetteville, Arkansas, *Donley Suddath* of Henrietta, and *Donald, Derden & Donald* of Bowie, for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

MARTIN, JUDGE.—Offense, murder; penalty, twenty years in the penitentiary.

On the afternoon of Sunday, January 13, 1929, the deceased, A. R. Gooch, and one J. M. Wade went to the home of appellant, presumably to search it. Deceased entered the back door. Wade was at the front door. Shortly after deceased entered the house a shot was heard. Immediately thereafter appellant emerged from his home in his sock feet with a shot gun in his hand. Entering the house, witnesses found deceased dead in the living room with a wound in the back of the neck. A full charge of No. 7 shot had entered the body at this point producing as the attending physician said instant death. A six-shooter lay by his side. Another six-shooter was on his body. A search warrant was in his coat pocket.

The testimony of appellant and his witnesses tended to show that bad feeling had existed between appellant and deceased for some time; that deceased was a peace officer in the town of Nocona and had slapped appellant's jaws. He had been warned many times that deceased was going to kill him; had been told of his killing two other men and beating up many others. He was known as "Two Gun Gooch" and appellant had been told that he had been brought to town from another county for the purpose of killing him (appellant). Appellant's testimony showed that deceased entered his home on the Sunday afternoon in question with a drawn gun in hand, without knocking or making his presence known, and that Wade, who came from another county and was not an officer, was at the same time standing at the front door with drawn gun in hand; that appellant with his shoes off was lying in bed resting; that the first he knew of deceased's presence he heard him demanding of his wife to know where he (appellant) was; he asked several times. Appellant knew nothing of any search warrant. Under the circumstances

he said he grabbed his gun, not knowing but that appellant was going to kill him, as he had often heard he intended to do. Quoting from his testimony:

"I didn't want to shoot A. R. Gooch at that time. * * * I was afraid of Gooch because I was afraid that he was going to kill me. What I saw around there that made me think he was going to kill me was a gun. I saw two guns. If I hadn't been afraid he was going to kill me, I wouldn't have shot him. I knew at the time I shot him that he had his back to me. I didn't wait until he turned and began firing at me because I was scared. * * * When I got out there to the door in the living room I saw my wife just as she went out of the door and knew it was her. As to whether that was before the shot was fired, I would say it was just about the time the shot was fired. * * * I believe he said he would shoot; I think he told her not to run, he would shoot. I guess that was when she got up to leave the house."

We find no evidence in the record that appellant prior to the homicide was apprised of the fact that Gooch was armed with a search warrant or that he desired to search his premises.

The Court failed to submit any defensive issue whatever except that of lack of malice aforethought in mitigation of the punishment. The appellant properly excepted to the Court's failure to charge on self-defense. Many other alleged errors are argued in the brief and many law questions neither raised nor argued suggest themselves in the light of the record, but we content ourselves with a discussion only of the one above mentioned, which was properly raised, as this Court cannot go into the decision and discussion of questions that are purely academic. We are asked in appellant's brief to decide questions which the trial court had no opportunity to pass on. This we will not do.

We have stated the substance of such of the testimony as we think sufficiently raised the issue of self-defense. When raised, it is the duty of the Court to properly present the law of self-defense in all of its phases and this regardless of conflicts in the evidence or the belief of the trial court as to the truth of the evidence raising the issue. There was abundant evidence in the record which would justify the jury in rejecting appellant's theory of a justifiable killing, but this would not authorize the trial court to do so. This has been vested by law in the jury and not the Court. Lister v. State, 3 Tex. Crim. App. 17; Bell v. State, 17 Tex. Crim. App. 551; Wasson v. State, 3 Tex. Crim. App. 474; Hardin v. State, 40 Tex.

Crim. Rep. 208. For full collation of authorities on duty of trial court on matters of this character, see Encyclopedic Digest of Texas Reports (Criminal Cases) Vol. 4, Pages 122, 123 and 111.

We do not pass on appellant's assignment of error as to the refusal of motion for continuance as such matter will not likely again arise.

For the error above discussed the judgment is reversed and cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal, Appeals and approved by the Court.

ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—The State files an earnest and persuasive motion for rehearing, insisting that under no phase of the case could appellant be entitled to have submitted to the jury more than imperfect self-defense. We have again gone over the facts in the light of the able motion. We are unable to escape the force of the proposition that under the testimony there was a jury question raised which the court had no right to take from them. Appellant introduced witnesses who testified that deceased had the reputation of being a dangerous and violent man; that deceased had threatened him; that he had been informed by many people that deceased was going to kill him; that deceased had shot at and injured other people while in the apparent discharge of his duty as an officer. He further testified that on the occasion in question deceased came to his, appellant's, home, and entered without knocking, or in any other customary manner indicating his presence, and that deceased had a drawn pistol in his hand at the time. In this latter testimony appellant was corroborated by his wife who said that she was in her home just prior to the killing and heard a light step as of some one walking to the door and into the house; that she looked and saw deceased with a pistol in his hand; that she looked at the door and saw another man standing there with a pistol in his hand. There seems no question of the fact that deceased did enter the home of appellant on said occasion with a drawn pistol in his hand. Such entry is to say the least unusual for one other than an occupant of the building, and unusual for an officer occupied only in the discharge of his duty, and we feel ourselves

unable to say that under these facts any court has the right to take to itself the decision of the question as to whether one who is the owner and proprietor of the house thus entered, and who has been informed that the party entering in going to kill him, and who sees said party with a pistol in his hand, is not entitled to have a jury pass upon whether these facts justified him in believing his life in danger and believing the party slain had done something indicating his present intention to execute the threats so made. Conceding the presence of liquor in appellant's garage, this but made him a presumptive violator of the law, a presumption which could be rebutted and overcome by testimony, which facts would have to be told the jury if he were on trial charged with being such violator of the law forbidding possession of intoxicating liquor. We seriously doubt whether this would deprive him of the right to defend his person or home against an unlawful invasion. While one in possession of a lawful search warrant has the right of ultimate entry and ultimate search as against refusal of permission to enter, or refusal to permit to search, we know of no rule of law or decision which authorizes an entry without notification or attempted notification to the occupants, or without and aside from the usual formalities precedent to the entry into the premises of another by one who is neither a resident nor occupant of such house. As far as this record shows the officer did not knock, and did not in anywise indicate that he had a search warrant. He did not have it in his hand, nor did he say anything regarding it to appellant's wife. He entered appellant's house, came into the room, with a drawn pistol in his hand. Whatever a jury might think of this under appropriate instructions, we find ourselves unable to get away from the conclusion that these facts gave to appellant the right to have his theory of self-defense submitted to the jury. Appellant not only excepted to the charge of the court for its failure to submit self-defense, but presented a number of special charges, some of which appear to present with sufficient accuracy the applicable theories of such self-defense as at least to call the court's attention to the necessity for the submission of the issue.

The State's motion for rehearing will be overruled.

*Overruled.*