### NEALY McCOWN V. STATE

No. 32,079. June 22, 1960

Motion for Rehearing Overruled October 19, 1960

*C. C. Divine,* Houston, for appellant.

*Dan Walton,* District Attorney, *Samuel H. Robertson, Jr., Jack J. Rawitscher,* Assistants District Attorney, Houston, and *Leon Douglas,* State's Attorney, Austin, for the state.

MORRISON, Presiding Judge.

The offense is possession of morphine, with a prior conviction for possession of marijuana plead for enhancement; the punishment, 20 years.

Officer Hightower of the Houston police testified that, while armed with a search warrant and in company with other officers, he went to a certain address in the city; that the other officers waited at the front while he walked down the sidewalk at the side of the apartment house, from where he was able to see inside the ground floor apartment No. 9, and there observed appellant in company with another person seated on the bed; that he then returned to the front door, and the group of officers pro-

ceeded down the hall to the door of apartment No. 9, where they made their presence known by knocking two or three times. He testified that they received no response, and after waiting for a period of time, which he estimated to be from forty seconds to two or three minutes, he and his fellow officers forced the door and there found appellant and a woman named Horelica; that he handed the search warrant to appellant, at which time appellant threw something on the floor and the Horelica woman knocked a small pot off the cabinet and onto the floor. He stated further that a search of the apartment revealed a hypodermic needle, an eyedropper with a rubber bulb syringe, a small metal sauce pan, three tablespoons, each with a bent handle, all of which was turned over to the city chemist.

Officer Bass testified that, armed with a search warant for apartment No. 9 at the address in question, he and the other officers presented themselves at the door of such apartment but that the occupants failed to respond to their knocks and an entry was forced; that as they entered he saw appellant, who was seated beside a woman on a bed near the door through which he had entered, make a motion with his hand and some object went from his hand and landed on the bathroom floor some two feet away; that he recovered the object and found it to be a "bulb syringe," which was introduced in evidence, and that he also found a hypodermic needle, two or three spoons and a small pot. He stated that he plugged the opening in the syringe to prevent spilling of the liquid contained therein, and that the fruits of their search were submitted to the chemist.

Chemist and toxicologist McDonald testified that he ran a test on the contents of the eyedropper and found it to contain ten or eleven milligrams of morphine, which was a sufficient amount to cause a hypnotic or narcotic effect upon an individual. It was stipulated that the articles found could be used for a subcutaneous injection of narcotics.

He testified, on cross-examination, that an ounce of paregoric contained twelve milligrams of morphine, but that he could not determine whether the morphine which he found had come from the paregoric. No paregoric bottle was found in the apartment.

The prior conviction was established.

Appellant, testifying in his own behalf, stated that the Horelica woman had come to his apartment on the day in question and brought some paregoric with her, that she put it in the

pot which the officers later seized, placed the same on the fire, that the contents of the pot caught on fire and burned, and she then carried the pot into the bathroom, at which time the officers broke in the door of his apartment without any warning, came rushing in, stating that they were police officers, and later exhibited the search warrant to him. He admitted the prior conviction.

The state called the owner of the apartment house in question in rebuttal, and he testified that the door to the apartment had not been seriously damaged by the forced entry.

The jury resolved the conflict in the evidence against appellant, and we find it sufficient to support the conviction.

We shall discuss the contentions advanced in appellant's brief. He first asserts that the court erred in refusing to require the state to disclose the name of the officers' informant. The means by which appellant sought to elicit this information need not be discussed because it is well established that an officer is not required to reveal the name of the person from whom he receives his information. Arredondo v. State, 168 Tex. Cr. Rep. 110, 324 S.W. 2d 217; Fance v. State, 167 Tex. Cr. Rep. 32, 318 S.W. 2d 72; Bridges v. State, 166 Tex. Cr. Rep. 556, 316 S.W. 2d 757, and cases there cited.

Appellant's next contention is that the search warrant was illegally executed. Reliance is had upon Justice v. State, 112 Tex. Cr. Rep. 586, 18 S.W. 2d 657; Goodspeed v. State, 114 Tex. Cr. Rep. 334, 25 S.W. 2d 858; McGee v. State, 121 Tex. Cr. Rep. 188, 51 S.W. 2d 714; and Condra et al v. Anderson et al, 254 S.W. 2d 528. The relevant statutes are Article 321, V.A.C.C.P. which provides that an officer may break down a door in order to execute a search warrant "if he cannot effect an entrance by other less violent means," and Article 319, supra, which provides that, "The officer shall upon going to the place ordered to be searched *or before seizing any property for which he is ordered to make search,* give notice of his purpose * * * " (Italics ours)

We find nothing in the cases cited by appellant which would require us to find the instant search illegally executed, nor do we find any expression of the Supreme Court of the United States in Miller v. U. S., 357 U. S. 301, 2 L. ed. 1332, 78 S. Ct. 1190 (not cited), at variance with the conclusion we here reach that the search warrant was executed in compliance with the controlling

Texas statutes. The facts in support of such conclusion are set forth above in the statement of the case.

If we understand appellant's next contention, it is that he was not permitted to perfect his bill of exception concerning appellant's co-defendant. The record reflects that the court ordered the jury retired and made no restrictions or limitations as to what appellant might prove in its absence. We cannot accept statements in appellant's brief as to the evidence; the same should have been developed in the absence of the jury so as to properly present the matter by bill of exception.

Appellant next complains of the asking of a question of the witness McDonald concerning the legality of extracting morphine from the paregoric. The record reflects that the objection was sustained and the jury was instructed not to consider the same for any purpose, but the motion for mistrial was overruled. We do not find the asking of the question to be so injurious as to call for a reversal of this conviction.

Appellant complains that the records of the prison system establishing the prior conviction were not admissible because a copy thereof had not been delivered to him prior to the trial. In Roberts v. State, 164 Tex. Cr. Rep. 537, 301 S.W. 2d 154, we disposed of a similar contention as follows:

"In a case such as the one before us here, the accused cannot plead surprise under Section 3 of Article 3731a, V.A.C.S., because the indictment puts accused on notice that it will be necessary for the State to establish the two prior convictions."

Appellant's objections and exceptions to the court's charge cannot be considered because the record before us here does not reflect that they were ever presented to the trial court or acted upon by him.

Finding the evidence sufficient to support the conviction and no reversible error appearing, the judgement is affirmed.